IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACQUIERE BURNSIDE,<br><br>Defendant. | No. 17-CR-2094-LTS<br><br>REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS |

_____

## I.  INTRODUCTION

This matter comes before me pursuant to defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. (Doc. 19). The grand jury charged defendant in a one-count indictment of being in possession of a firearm as a felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). (Doc. 2). The charge arose from evidence found during the execution of a traffic stop on October 20, 2017. Defendant argues the Court should suppress this evidence because the officer who stopped defendant lacked any reasonable suspicion that defendant was in violation of Iowa law. (Doc. 19-1, at 2).

The Honorable Leonard T. Strand, Chief United States District Court Judge, referred this motion to me for a Report and Recommendation. On February 23, 2018, I held an evidentiary hearing on defendant's motion at which Waterloo Police Officer Andrew Tindall testified. I admitted into evidence government's Exhibit 1 (Officer Tindall's incident report), government's Exhibit 2 (a compact disc containing videotapes of Officer Tindall's squad car and body camera), and defendant's Exhibit A (same as

1

government's Exhibit 2). For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to suppress.

## II. FINDINGS OF FACT

On October 20, 2017, at approximately 10:00 p.m., Waterloo Police Officer Andrew Tindall observed a silver Hyundai Santa Fe with a defective left license plate lamp. Officer Tindall conducted a traffic stop on the vehicle. Officer Tindall made contact with the driver of the vehicle, defendant, who was unable to provide a driver's license, but identified himself by name.

Dispatch informed Officer Tindall that defendant was known to carry weapons. Defendant was asked to step outside of the vehicle, and Officer Tindall performed a pat down of defendant's person. Officer Tindall recovered a silver Bryco Arms Jennings Nine Model 9mm handgun concealed within defendant's underwear.

The Hyundai Santa Fe operated by defendant was manufactured with two lights for illumination of the license plate. Officer Tindall's body camera captured the license plate area of the Hyundai Santa Fe which showed the inoperable left license plate lamp. (Exhibit 2). Officer Tindall noted in his report that the defective license plate lamp was "in violation of IA Code" without mentioning a specific code section. (Exhibit 1, at 5).

Officer Tindall is a patrol officer with only four years of experience.

## III. ANALAYSIS

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. It is well established that a traffic stop constitutes a seizure for Fourth Amendment purposes. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A traffic stop is lawful if supported by probable cause or reasonable suspicion that a vehicle committed a traffic violation. *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "Even a minor traffic violation provides probable cause for a traffic stop." *United*

*States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010). "Whether probable cause exists for a traffic stop is judged by whether any mistake, whether of law or fact, is objectively reasonable." *Id*. (citing *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)). At the hearing, defendant conceded that if the traffic stop was valid, that there is no other ground for suppressing the evidence, and the government conceded that if the traffic stop was invalid, then all of the evidence from the traffic stop should be suppressed.

Defendant argues the firearm seized from defendant was the result of an unlawful seizure because Officer Tindall had no reasonable suspicion that defendant was operating the vehicle in violation of any state law. (Doc. 19-1, at 2). At the hearing, Officer Tindall testified that he believed defendant was operating the vehicle in violation of the second sentence of Iowa Code § 321.387, as the vehicle had a defective left license plate lamp. Iowa Code § 321.387, entitled "Rear Lamps," provides:

> Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear. *All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment*.

Iowa Code § 321.387 (emphasis added). The plain language of the statute seems to be all-encompassing by requiring that "*all* lamps and lighting equipment originally manufactured on a motor vehicle" be kept in working condition. Defendant, however, argues that § 321.387 is entitled Rear Lamps, and argues it is clear from the context of the statute that "lamps and lighting equipment" referred to in the final sentence is a reference to the red "lighted rear lamp or lamps" identified in the preceding sentence and "is not intended to apply generally to all other lamps on a vehicle," especially since Iowa Code § 321.388 specifically addresses license plate lights. (Doc. 22, at 2).

3

I find the scope of the final sentence of § 321.387 is not clear from the statute. The wording of the statute is ambiguous. When a statute is ambiguous, courts may apply certain cannons of statutory interpretation to resolve the ambiguity. Under the Title and Headings Cannon, a court may look for meaning by reference to the title of the statute. "[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text." *INS v. National Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991). The title to Iowa Code § 321.387 refers to rear lamps, which suggests any lights on the rear of a vehicle, including lamps illuminating license plates. This would suggest that the statute would not apply to headlights or interior dome lights, but does not eliminate its application to license plate lamps on the rear of the vehicle.

A court may also consider the context of the language at issue in the statute as a whole. Pursuant to the Whole-text Canon of statutory interpretation, "[i]n ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Although the first sentence of Iowa Code § 321.387 refers to rear red lights, the second sentence refers to "all lamps and lighting equipment," without reference to location or color. Considering the context of the statute as a whole, however, it appears that the second sentence should be interpreted as referring only to rear red lights.

A court may also consider whether other, more specific, statutory provisions pertain to the same subject matter under the General/Specific Cannon. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (stating that "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand"). Here, the legislature enacted another statute, Iowa Code § 321.388, which provides:

> Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear. When the rear registration plate is illuminated by an electric lamp other than the required rear lamp, the two lamps shall be turned on or off only by the same control switch at all times when headlights are lighted.

Iowa Code § 321.388. Although Iowa Code § 321.388 was enacted in 1985, and Iowa Code § 321.387 was enacted in 1992, this statute more specifically addresses the issue of lamps illuminating license plates. Iowa Code § 321.388 does not include language indicating that all lamps must be in working order. Further, the language of this statute references "the rear lamp or a separate lamp," perhaps suggesting that a rear lamp can be something different than the lamps illuminating a license plate. Even though Iowa Code § 321.388 was not enacted subsequent to Iowa Code § 321.187, this cannon of statutory interpretation still militates toward a conclusion that Iowa Code § 321.387 is limited to rear red lights, and not rear license plate lights which are specifically addressed in Iowa Code § 321.388.

Finally, in resolving an ambiguity in a statute in a criminal case, a court should apply the rule of lenity. The rule of lenity states that a court should not interpret a criminal statute "so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *United States v. R.L.C.*, 915 F.2d 320, 325 (8th Cir. 1990). In other words, when, as here, a statute is ambiguous and it is unclear whether the legislature intended the language in Iowa Code § 321.387 to apply to all lighting equipment on a car, or only the rear red lights, a court should err by interpreting the statute in a way favorable to a criminal defendant.

Considering all of these cannons of statutory interpretation individually and together, I conclude that the second sentence in Iowa Code § 321.387 refers only to rear

5

Case 6:17-cr-02094-CJW-MAR    Document 27    Filed 02/26/18    Page 5 of 8

red lamps on a vehicle, and not to the rear lamps illuminating a license plate. That does not, however, end the analysis. In *Heien v. North Carolina*, ---U.S.---, 135 S. Ct. 530 (2014), the United States Supreme Court held that an officer does not violate the Fourth Amendment in stopping a vehicle, even if the officer was mistaken as to the law, so long as that mistake was reasonable. In *Heien*, the Supreme Court reasoned:

> But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law.

*Heien*, 135 S. Ct. at 536. *Heien* similarly involved the interpretation of ambiguous statutory language regarding rear vehicle lamps. The Supreme Court concluded that the officer's mistaken interpretation of the statute in that case was not unreasonable.

> Although the North Carolina statute at issue refers to "a stop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamp may be incorporated into a unit with one or more *other* rear lamps." N.C. Gen.Stat. Ann. § 20–129(g) (emphasis added). The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the equivalent in good working order," § 20–129(d), arguably indicating that if a vehicle has multiple "stop lamp[s]," all must be functional.
> The North Carolina Court of Appeals concluded that the "rear lamps" discussed in subsection (d) do not include brake lights, but, given the "other," it would at least have been reasonable to think they did. Both the majority and the dissent in the North Carolina Supreme Court so concluded, and we agree. *See* 366 N.C., at 282–283, 737 S.E.2d, at 358–359; *id.*, at 283, 737 S.E.2d, at 359 (Hudson, J., dissenting) (calling the

6

> Court of Appeals' decision "surprising"). This "stop lamp" provision, moreover, had never been previously construed by North Carolina's appellate courts. *See id.*, at 283, 737 S.E.2d, at 359 (majority opinion). It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.

*Heien*, 135 S. Ct. at 540.

Applying the holding in *Heien* here, I find Officer Tindall's mistake of law was objectively reasonable. Officer Tindall's interpretation is not an unreasonable interpretation based on the plain language of Iowa Code § 321.387. Like in *Heien*, there is no Iowa or federal case law interpreting § 321.387 that would lead Officer Tindall to believe his interpretation was incorrect. Officer Tindall testified that throughout his training no one has ever instructed him on the interpretation of the final sentence of Iowa Code § 321.387, nor has he been told that his interpretation is incorrect. In addition, Officer Tindall testified that he has made other traffic stops under his interpretation of the final sentence of Iowa Code § 321.387

Therefore, under the circumstances of this case, I find Officer Tindall had an objectively reasonable belief at the time of the traffic stop that the defective left license plate lamp on the vehicle operated by defendant was a violation of Iowa Code § 321.387. Since Officer Tindall's mistake of law was objectively reasonable, the traffic stop was supported by reasonable suspicion that defendant's vehicle was in violation of Iowa Code § 321.387. Therefore, Officer Tindall's stop of defendant's vehicle was lawful under the Fourth Amendment.

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court **deny** defendant's Motion to Suppress. (Doc. 19).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 26th day of February, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa