# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACQUIERE BURNSIDE,<br><br>Defendant. | No. CR17-2094-LTS<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

_____

This matter is before me on a Report and Recommendation (R&R) in which the Honorable Judge C.J. Williams, United States Chief Magistrate Judge, recommends that I deny defendant's motion (Doc. No. 19) to suppress evidence. *See* Doc. No. 27. Defendant has filed an objection (Doc. No. 40) to the R&R and plaintiff (the Government) has filed a partial objection (Doc. No. 41).

## I.   APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## II. BACKGROUND

### A. *Procedural History*

On December 20, 2017, a grand jury returned an indictment (Doc. No. 2) charging defendant Jacquiere Burnside with one count of illegally possessing a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Burnside filed a motion (Doc. No. 19) to suppress evidence and the Government filed a resistance (Doc. No. 22). Judge Williams conducted an evidentiary hearing on February 23, 2018, during which Government's Exhibits 1 and 2 and defendant's Exhibit A were received.[1] The Government also presented the

---

[1] Defendant's Exhibit A is the same as Government's Exhibit 2. For the sake of consistency with the R&R and the parties' briefs, I will refer to exhibits using the numbers and letters assigned by the parties, rather than by their docket numbers.

testimony of Waterloo Police Officer Andrew Tindall. On February 26, 2018, Judge Williams issued an R&R in which he recommends that I deny the motion.

## B. Relevant Facts

At 10:00 p.m. on October 20, 2017, Officer Tindall conducted a traffic stop of a silver Hyundai Santa Fe. Burnside was the driver of the vehicle and identified himself by name. The stated reason for the stop was a defective left license plate lamp. At the time of the stop, Tindall was notified that Burnside was known to carry weapons. Tindall asked Burnside to exit the vehicle. Burnside complied and Tindall performed a pat down search, during which he discovered a silver Bryco Arms Jennings Nine Model 9mm handgun on Burnside's person. Burnside did not have a permit for the weapon.

The vehicle at issue was originally equipped with two white lights that illuminated the rear license plate. One license plate lamp was not operating but the other was functioning and illuminated the license plate so it could be seen within 50 feet of the vehicle. Tindall testified that he believed the defective license plate lamp was in violation of Iowa Code § 321.387, which addresses "Rear lamps" on a vehicle. However, he did not issue Burnside a citation for a defective license plate lamp.

## C. Judge Williams' Findings

Burnside argues that evidence of the firearm should be suppressed because the officer who stopped him lacked any reasonable suspicion that he was in violation of Iowa law. Burnside contends that the statute referenced by Tindall, Iowa Code § 321.387, is not applicable to defective license plate lamps. Judge Williams found that the plain language of section 321.387 was ambiguous. Doc. No. 27 at 3–4. Applying various federal rules of statutory interpretation, he then found that the statute only applied to rear red lamps on a vehicle, and not rear lamps illuminating license plates. *Id.* at 4–6.

Judge Williams next analyzed whether the officer's mistake of law was reasonable such that no Fourth Amendment violation occurred. *Id.* at 6. He found that the mistake was reasonable:

> Officer Tindall's interpretation is not an unreasonable interpretation based on the plain language of Iowa Code § 321.387. Like in *Heien*, there is no Iowa or federal case law interpreting § 321.387 that would lead Officer Tindall to believe his interpretation was incorrect. Officer Tindall testified that throughout his training no one has ever instructed him on the interpretation of the final sentence of Iowa Code § 321.387, nor has he been told that his interpretation is incorrect. In addition, Officer Tindall testified that he has made other traffic stops under his interpretation of the final sentence of Iowa Code § 321.387.
>
> Therefore, under the circumstances of this case, I find Officer Tindall had an objectively reasonable belief at the time of the traffic stop that the defective left license plate lamp on the vehicle operated by defendant was a violation of Iowa Code § 321.387. Since Officer Tindall's mistake of law was objectively reasonable, the traffic stop was supported by reasonable suspicion that defendant's vehicle was in violation of Iowa Code § 321.387.

*Id.* at 7.

### III. DISCUSSION

Burnside objects to Judge Williams' finding that Tindall's mistake of law was reasonable.[2] Doc. No. 40 at 2. The Government objects to Judge Williams' finding that § 321.387 applies only to rear red lamps, not to all rear lamps on the vehicle. Doc. No. 41 at 1–2. During the suppression hearing, the parties confirmed that the validity of the traffic stop is the only disputed issue. Thus, if the traffic stop is valid, the motion to suppress must be denied.

"The Fourth Amendment guarantees the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"

---

[2] His arguments also address Judge Williams' finding that the statute is ambiguous, even though he does not explicitly object to that finding.

4

*Whren v. United States*, 517 U.S. 806, 809 (1996). A traffic stop constitutes a seizure for Fourth Amendment purposes. *Id.* at 809–10. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810; *see also United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007) ("[I]t is well established that a traffic violation—however minor—creates probable cause to stop the driver of a vehicle.") (alteration in *Lyons*) (quoting *United States v. Barry*, 98 F.3d 373, 376 (8th Cir. 1996)). Probable cause may exist even if the officer makes a mistake of law. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). Whether the mistake of law can support reasonable suspicion is judged by whether that mistake is objectively reasonable. *Id.* at 539.

There are two relevant statutory provisions in this case. The first is Iowa Code § 321.387, titled "Rear lamps," which states:

> Every motor vehicle and every vehicle which is being drawn at the end of a train of vehicles shall be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear. All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment.

Tindall testified that he believed Burnside's defective license plate lamp violated the second sentence of this section. However, Burnside argues that another provision is more applicable – § 321.388, titled "Illuminating plates." This section states, in relevant part,

> Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. When the rear registration plate is illuminated by an electric lamp other than the required rear lamp, the two lamps shall be turned on or off only by the same control switch at all times when headlamps are lighted.

Neither party disputes that the license plate was illuminated and visible up to 50 feet, in compliance with § 321.388. The issue is whether the requirement in § 321.387 that "all lamps and lighting equipment originally manufactured on a motor vehicle shall be kept

5

in working condition" applies only to red rear lamps or includes the white lamps that illuminate the license plate. Both parties argue that the statute is unambiguous, but they argue different interpretations. The Government claims that § 321.387 includes license plate lamps while Burnside argues it applies only to red rear lamps. Because one license plate lamp was still working and the license plate was sufficiently visible, Burnside asserts there was no probable cause to support the traffic stop.

### A. *Statutory Interpretation*

The Government argues that I should find the traffic stop was supported by a reasonable suspicion that the vehicle was in violation of § 321.387 "without ruling as to a substantive interpretation of Iowa law." Doc. No. 41 at 2.[3] A court may decide that an officer's reading or mistake of the law is reasonable without deciding whether the statute at issue actually prohibits certain conduct. *See United States v. Bowers*, 678 F. App'x. 460, 461 (8th Cir. 2017). However, because the R&R specifically addressed this issue and the substantive argument was addressed by both parties in previous briefing and at the suppression hearing, I find it necessary to address the issue here.

Burnside does not object to Judge Williams' finding that the second sentence of § 321.387 does not apply to license plate lamps, but neither did Burnside respond to the Government's objection. Doc. No. 40 at 2. Due to the nature of its objection, the Government did not provide any additional argument as to an alternative reading of § 321.387. In the R&R, Judge Williams relied on federal canons of statutory interpretation rather than state rules of construction. Because statutory interpretation is a question of law, when interpreting a state statute I must apply that state's rules of statutory

---

[3] In its objection, the Government states "for the reasons stated in the government's brief and stated in the hearing" the court should not rule on a substantive interpretation of Iowa law. Doc. No. 41 at 2. However, at the hearing and in its initial briefing, the Government in fact did argue a substantive interpretation of Iowa law. Tr. 24–25; Doc. No. 21 at 4–5. In fact, the reasonable mistake argument was first brought up at the suppression hearing. Tr. 25. There was no suggestion by either party that the court should not interpret the Iowa statute at issue.

construction. *See Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015) (citing *Roubideaux v. N. Dakota Dep't. of Corr. & Rehab.*, 570 F.3d 966, 972 (8th Cir. 2009)). When a federal court is confronted with an issue of first impression under state law, it must predict, as best it can, how the state's high court would resolve the issue. *See, e.g., Olympus Aluminum Prod., Inc. v. Kehm Enters., Ltd.*, 930 F. Supp. 1295, 1312 (N.D. Iowa 1996). The Iowa courts have not determined whether § 321.387 applies to license plate lamps.[4]

When interpreting a statute, Iowa courts first determine whether or not it is ambiguous. *Ferezy v. Wells Fargo Bank, N.A.*, 755 F. Supp. 2d 101, 1014 (S.D. Iowa 2010). If it is ambiguous, Iowa courts attempt to resolve the ambiguity by determining the legislative intent of the statute. *State v. Wiederien*, 709 N.W.2d 538, 541–42 (Iowa 2006); *Olympus*, 930 F. Supp. at 1311 (stating that legislative intent is the "touchstone of statutory interpretation under Iowa law"). Here, I find the second sentence of § 321.387 to be ambiguous. Admittedly, the words of that sentence, in isolation, are not ambiguous, as the ordinary meaning of the phrase "all lamps and lighting equipment" plainly describes a broad, all-inclusive scope. However, this sentence is contained in a statute entitled "Rear lamps." Moreover, the first (and only other) sentence in the statute addresses only rear lamps that must "exhibit a red light plainly visible from a distance of five hundred feet to the rear." This context creates ambiguity as to the Legislature's intent concerning the scope and application of the second sentence.

---

[4] The closest case I have located is a decision without published opinion of the Iowa Court of Appeals interpreting Iowa Code § 321.388. *State v. Bateman*, 859 N.W.2d 671, No.13-1716, 2014 WL 5478124 at *2 (Iowa Ct. App. Oct. 29, 2014). The court stated that "having one inoperable light on his license plate is not a violation of the law," but the court cited only section 321.388, without reference to 321.387. Additionally, *Bateman* was an ineffective assistance of counsel case and the court ultimately concluded that the record was inadequate because neither party established whether the license plate was visible at 50 feet. As such, *Bateman* is not particularly instructive.

To determine legislative intent, Iowa courts consider "(1) the language of the statute; (2) the objects sought to be accomplished; (3) the evils sought to be remedied; and (4) the reasonable construction that will effectuate the statute's purpose rather than one that will defeat it." Legislative intent can be expressed by omission as well as inclusion. *Watson v. Iowa Dept. of Transp. Motor Vehicle Div.*, 829 N.W.2d 566, 570 (Iowa 2013). "[I]f the legislature had intended on statutory provision to apply without regard to another provision already in force, it would have said so." *Olympus*, 930 F. Supp. at 1312 (citing *Federal Land Bank of Omaha v. Bryant*, 445 N.W.2d 761, 762 (Iowa 1989); *Federal Land Bank of Omaha v. Sleister*, 444 N.W.2d 504, 506 (Iowa 1989)). For example, if a statute does not make an express exception to a general rule stated in another statutory provision, the general rule is still controlling. *Id.* When statutes relate to either the same subject or "closely allied subjects" they are *in pari materia* and "must be construed, considered and examined in light of their common purpose and intent so as to produce a harmonious system or body of legislation." *Prudential Ins. Co. of Am. v. Rand & Reed Powers P'ship*, 972 F. Supp. 1194, 1209 (N.D. Iowa 1997) (quoting *Farmers Co-op. Co. v. DeCoster*, 528 N.W.2d 536, 538 (Iowa 1995)); *State v. Coleman*, 907 N.W.2d 124, 137 (Iowa 2018) ("we necessarily operate on the objective assumption that the legislature strives to create a symmetrical and harmonious system of laws"); *State v. Nail*, 743 N.W.2d 535, 540 (Iowa 2007) ("The *in pari materia* approach is especially appropriate in the area of criminal law, where our legislature has established a number of code chapters with highly detailed, interconnecting provisions").

Iowa Code §§ 321.387 and 321.388 are within a subchapter of Section 321 entitled "Lighting Equipment." In 1992, the Iowa Legislature made numerous changes to Section 321 via legislation with a lengthy title that begins with "An Act Relating to Motor Vehicle Laws . . . ." *See* 1992 Ia. Legis. Serv. 1175 (SF 2343) (the Act). Among other things, the Act added a new section, designated as § 321.385A and entitled "Citation for unlighted headlamp." In general, this new section provides that a citation issued with

regard to certain vehicle lighting requirements must provide a 72-hour period during which the person charged with the violation may make repairs. *See* Iowa Code § 321.385A. The Legislature specifically referenced both § 321.387 and § 321.388 as follows:

> A citation issued for failure to have rear lamps as required under section 321.387 or a rear registration plate light as required under section 321.388 shall first provide for a seventy-two hour period within which the person charged with the violation shall replace or repair the lamps or light.

*Id.* This language suggests that the Legislature understood § 321.387 to address rear lamps and § 321.388 to address the rear registration plate light. This understanding would support Burnside's argument that a vehicle's license plate illumination light is subject to § 321.388, not § 321.387. However, in the same Act, the Legislature amended § 321.387 to add its second sentence, which states:

> All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment.

*See* Iowa Code § 321.387 (as amended by the Act). Unlike the first sentence of § 321.387, which addresses a vehicle's tail lights (i.e., the lighted rear lamps that must exhibit "a red light plainly visible from a distance of five hundred feet to the rear"), the sentence added in 1992 addresses "[a]ll lamps and lighting equipment." This change appears to have filled a gap in the regulatory scheme, as the other statutory provisions addressing lighting equipment that were enacted before 1992 did not include an express requirement that <u>all</u> original lamps and lighting equipment be kept in working order. *See, e.g.,* Iowa Code § 321.385 (head lamps), § 321.388 (license plate lamps) § 321.404 (signal lamps)

Because the Act represented a significant overhaul of Iowa's motor vehicle regulations, I find that the Iowa Legislature added the second sentence to § 321.387 with the intent to create an express requirement that "[a]ll lamps and lighting equipment" be maintained in working condition. Of course, a statute that addresses only a certain type

9

of lamps (rear lamps) may not have been an ideal location to insert such a broad requirement. However, other portions of the Act – quoted above – demonstrate that the Legislature was capable of adding modifying language to specify particular types of lamps when it wished to do so. *See, e.g.,* Iowa Code § 321.385A (making specific references to "head lamps," "rear lamps" and "a rear registration plate light"). Instead, the Legislature referred to "[a]ll lamps and lighting equipment," a phrase that necessarily includes the rear license plate lights.

I further find that the requirement added in 1992 does not create a conflict with § 321.388 (which the Act did not amend), as § 321.388 imposes distinguishable requirements. Under § 321.388, a vehicle's rear license plate must be illuminated with white light such that the plate is "clearly legible from a distance of fifty feet to the rear." Iowa Code § 321.388. Meanwhile, the second sentence of § 321.387 simply requires that all originally-installed lamps and lighting equipment be maintained in working condition. These are independent requirements. For example, the rear license plate lamps on a particular vehicle could be "in working condition," as required by the second sentence of § 321.387, yet be too dim to satisfy the 50-foot legibility requirement of § 321.388. As this case demonstrates, the reverse is also true. Burnside's vehicle had two rear license plate lights, with only one being operable. Even though the one operable light provided sufficient illumination to satisfy § 321.388, the fact that one lamp was not "in working condition" violated the second sentence of § 321.387.

In short, when analyzing the Act, considering Chapter 321 as a "harmonious system of laws" and reading the statute as a whole, I predict that the Iowa Supreme Court would find that operating a motor vehicle with one inoperable license plate lamp violates § 321.387, regardless of whether another lamp is providing the minimum illumination required by § 321.388. Because any traffic violation, however, minor, creates probable cause to stop the vehicle, *Lyons*, 486 F.3d at 371, the stop in this case did not violate Burnside's Fourth Amendment rights.

10

### B. *Reasonable Mistake of Law*

Although I have found that Officer Tindall was not mistaken in his interpretation of Iowa Code § 321.387, I will briefly address the Government's alternative argument for upholding the traffic stop. That Government contends that even if § 321.387 does not apply to license plate lamps, the stop was valid if Tindall made a reasonable mistake of law. "[T]he Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway.'" *Heien*, 135 S. Ct. at 536 (U.S. 2014). Mistakes of law, if reasonable, can still form a valid basis for reasonable suspicion. *Id*. These mistakes must be objectively reasonable. *Id*. at 539. The court does not examine the subjective understanding of the officer. *Id*. "An officer can gain no Fourth Amendment advantage through a sloppy study of the law." *Id*. at 539–40. The critical point is whether the statute requires a "quite difficult question of interpretation." *Id*. at 542.

In *Heien*, the officer's mistake of law was objectively reasonable when an "everyday reader of English" could interpret the statute differently than courts might. *Id*. at 540. Further, the statute had not previously been construed by the North Carolina appellate courts, meaning there was no precedent on which the officer could have relied. *Id*. In *Baldwin v. Estherville, Iowa*, 218 F. Supp. 3d 987 (N.D. Iowa 2016), this court noted that in *Heien*, the mistake of law "arose from an officer's uncertainty about the meaning of statutory language that had not previously been construed by the courts." *Id*. at 999. In *Baldwin*, by contrast, the officers believed that a specific provision of the Iowa Code was incorporated into a city ordinance when, in fact, it was not. *Id*. The court found this mistake was objectively unreasonable because the officer could have consulted "more authoritative resources" instead of simply asking other officers or reading a handbook that summarized law statewide. *Id*. The answer to the question of whether the Iowa statute had been incorporated into the city's ordinances did not "depend upon obtuse or potentially ambiguous language requiring considerable legal expertise to interpret." *Id*.; *see also United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)

(stating that officers should not be expected to "interpret the traffic laws with the subtlety and expertise of a criminal defense attorney.").

As noted above, "[a]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Heien*, 135 S. Ct. at 539–40. However, sloppy study is not the issue here. Tindall had four years of experience, had a copy of the Iowa traffic code on hand and had received 16 weeks of training. Neither his training nor other source materials clearly stated whether one inoperable license plate light violates § 321.387. Tr. 20–22. No Iowa appellate court decisions provided guidance on that issue. The decisions interpreting § 321.388 addressed only the illumination requirement and required visible distance, not whether an inoperable license plate lamp violates § 321.387. *See State v. Lyon*, 862 N.W.2d 391, 398 (Iowa 2015); *State v. Tyler*, 803 N.W.2d 288, 295 (Iowa 2013); *United States v. Harken*, No. CR14-3028, 2014 WL 3809749 at *6 (N.D. Iowa Aug. 1, 2014), *recommendation adopted*, 2014 WL 4673272 (N.D. Iowa Sept. 18, 2014), *aff'd*, 641 Fed. Appx. 638 (8th Cir. 2016).

Ultimately, the issue here involves an "*arguable* reading of uncertain language" in the statute. *See Baldwin v. Estherville, Iowa*, No. C 15-3168-MWB, 2016 WL 7404705 at *3 (N.D. Iowa Dec. 21, 2018). Even if my interpretation of § 321.387 is incorrect, and the entire section applies only to rear lamps, I find that it was objectively reasonable for Officer Tindall to believe that one inoperable license plate lamp violated that statute. Because the alleged mistake of law was reasonable, the resulting traffic stop was not invalid.

### IV. CONCLUSION

For the reasons set forth herein:

1. I **accept in part** and **decline to accept in part** Judge William's report and recommendation (Doc. No. 27);

2. Burnside's objections (Doc. No. 40) to Judge Williams' report and recommendation are **overruled**;

3. The Government's objections (Doc. No. 41) to Judge Williams' report and recommendation are **sustained**;

4. Burnside's motion (Doc. No. 19) to suppress is **denied.**

**IT IS SO ORDERED.**

**DATED** this 20th day of April, 2018.

_____
Leonard T. Strand, Chief Judge